[No. 39750-1-II.   Division Two.   October 2, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM JOHN KIPP, JR., *Appellant*.

16

*Alton B. McFadden II* (of *Olsen & McFadden Inc.*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Jeremy A. Morris, Deputy*, for respondent.

¶1 WORSWICK, C.J. — A jury found William Kipp guilty of two counts of second degree child rape and one count of second degree child molestation. Kipp appeals, arguing (1) the trial court erroneously admitted testimony under RCW 10.58.090[1] and ER 404(b) regarding prior uncharged child molestation by Kipp, (2) the trial court erroneously admitted a secretly recorded conversation between Kipp and his brother-in-law under the privacy act (ch. 9.73 RCW), and (3) the trial court erroneously excluded a defense witness due to late disclosure. Kipp also submits a statement of additional grounds (SAG), arguing that the trial judge was biased against him and that the State misstated the burden of proof at closing argument. We hold that the evidence of uncharged child molestation was properly admitted under ER 404(b). We further hold that the trial court did not err in admitting Kipp's recorded conversation or in excluding testimony of the late-disclosed witness. And we hold that the arguments raised in Kipp's SAG are without merit. Accordingly, we affirm.

## FACTS

¶2 Kipp was charged with two counts of second degree child rape and one count of second degree child molestation

---

[1] RCW 10.58.090, found unconstitutional in *State v. Gresham*, 173 Wn.2d 405, 432, 269 P.3d 207 (2012), provided for the admissibility of a defendant's prior sex offenses when charged with a current sex offense, notwithstanding ER 404(b).

of his niece DGT.[2] The incidents occurred when DGT was 12 to 14 years old. Kipp molested DGT at her grandparents' house by touching her genitals and digitally penetrating her. Kipp also digitally penetrated DGT while she was staying overnight at his house.

¶3 JMC, who is DGT's older sister, also alleged that Kipp had sexually assaulted her when she was 15 years old. Kipp molested JMC at his house when JMC was living there by fondling her breasts while they watched TV. Also, on one occasion, Kipp molested JMC at her grandparents' house by performing oral sex on her and rubbing his penis on her genitals. Kipp was never charged for the acts against JMC.

¶4 Joseph T., the father of DGT and JMC, and Kipp's brother-in-law, subsequently confronted Kipp about his daughters' allegations. Kipp confessed, and Joseph T. secretly recorded the conversation.

¶5 Kipp moved pretrial to suppress the recording of his conversation with Joseph T. under Washington's privacy act.[3] Without taking testimony, the trial court denied Kipp's motion to suppress, ruling that Kipp's conversation with Joseph T. was not a private conversation and thus not subject to suppression under the privacy act.

¶6 Also pretrial, the trial court ruled that JMC's testimony was admissible under RCW 10.58.090, as well as under ER 404(b) to show a common scheme or plan. Further, the trial court excluded the testimony of defense witness Alan T., Kipp's brother-in-law, whom Kipp first disclosed six days before trial. At trial, the trial court admitted both JMC's testimony and the recording of Kipp's conversation with Joseph T. The jury found Kipp guilty as charged. Kipp appeals.

---

[2] We refer to DGT and JMC by their initials to protect their identities as the victims of sexual assault. We refer to their family's last name by initial for the same reason.

[3] Ch. 9.73 RCW.

## ANALYSIS

### I. Testimony of JMC

■ ¶7 Kipp argues that the trial court erred by admitting JMC's testimony under RCW 10.58.090 and ER 404(b). Because our Supreme Court has found RCW 10.58.090 to be unconstitutional, it was not a valid basis to admit JMC's testimony. *State v. Gresham*, 173 Wn.2d 405, 432, 269 P.3d 207 (2012). But because the trial court properly admitted JMC's testimony under ER 404(b) to show a common scheme or plan, the trial court did not err on this point and Kipp's argument fails.

■ ¶8 This court reviews a trial court's rulings under ER 404(b) for abuse of discretion. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). A trial court abuses its discretion if its decision "is manifestly unreasonable or rests on untenable grounds." *State v. Griffin*, 173 Wn.2d 467, 473, 268 P.3d 924 (2012). A decision is manifestly unreasonable if the court adopted a position no reasonable person would take. *Griffin*, 173 Wn.2d at 473. And a decision rests on untenable grounds when the trial court applies the wrong legal standard or relies on unsupported facts. *Griffin*, 173 Wn.2d at 473.

■ ¶9 ER 404(b) forbids a trial court to admit evidence of a person's other crimes, wrongs, or acts to prove a person's character to show that the person acted in conformity therewith. But ER 404(b) does not forbid such "other acts" evidence admitted for other purposes, such as to show a common scheme or plan.

¶10 In order for "other acts" evidence to be properly admitted to show a common scheme or plan under ER 404(b), it "must be '(1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative

than prejudicial.'" *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (quoting *State v. Lough*, 125 Wn.2d 847, 852, 889 P.2d 487 (1995)). Kipp disputes only the second element of this test: whether JMC's testimony was admitted for the purpose of proving a common scheme or plan.

¶11 There are two types of evidence admissible to show a common scheme or plan under ER 404(b): (1) evidence of prior acts that are part of a larger, overarching criminal plan or (2) evidence of prior acts following a single plan to commit separate but very similar crimes. *DeVincentis*, 150 Wn.2d at 19. The instant case deals with the second type of common scheme or plan: a single plan followed to commit separate but very similar crimes. Such a common scheme or plan "may be established by evidence that the Defendant committed markedly similar acts of misconduct against similar victims under similar circumstances." *Lough*, 125 Wn.2d at 852. Evidence of such a plan " 'must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations.' " *DeVincentis*, 150 Wn.2d at 19 (quoting *Lough*, 125 Wn.2d at 860). But such common features need not show a unique method of committing the crime. *DeVincentis*, 150 Wn.2d at 20-21.

¶12 Here, there was " 'such occurrence of common features' " between Kipp's abuse of DGT and JMC that his abuse of both victims was naturally to be explained as manifestations of a general plan, making JMC's testimony admissible under ER 404(b). *DeVincentis*, 150 Wn.2d at 19-20 (quoting *Lough*, 125 Wn.2d at 860). The victims were of similar ages, and both were Kipp's nieces. Also, Kipp molested both victims in two places: his house and their grandparents' house.

¶13 While Kipp performed different sex acts on each victim, the evidence shows that he had a common scheme or plan to get his nieces alone at his house or their grandpar-

ents' house and sexually abuse them, which he used on both DGT and JMC. *See Gresham*, 173 Wn.2d at 422-23 (evidence showed common scheme or plan when defendant took trip with young girls and fondled their genitals at night when other adults were asleep, notwithstanding some difference between sex acts performed); *Lough*, 125 Wn.2d at 849-52, 861 (defendant's history of drugging and raping women with whom he had a personal relationship showed common scheme or plan despite differences in details of each assault); *State v. Sexsmith*, 138 Wn. App. 497, 505, 157 P.3d 901 (2007) (evidence showed common scheme or plan where defendant was in position of authority over both victims, victims were the same age, and defendant isolated them and forced them to perform similar sex acts).

¶14 The trial court accordingly did not abuse its discretion in admitting JMC's testimony to show a common scheme or plan under ER 404(b). Kipp's claim to the contrary fails.

## II. Privacy Act

¶15 Kipp further argues that the trial court erred by admitting his recorded conversation with Joseph T. under the privacy act. He first argues that the trial court erred by failing to hold an evidentiary hearing to determine whether the conversation was private. He also argues that the trial court's findings of fact on the admissibility of the recording were unsupported by substantial evidence. And he additionally argues that the trial court's findings of fact do not support its conclusion of law that the conversation was admissible. We disagree on all points.

### A. *The Privacy Act*

¶16 Washington's privacy act, chapter 9.73 RCW, proscribes the recording of private conversations without first obtaining the consent of all participants. RCW 9.73-.030(1)(b). Information obtained in violation of this pro-

scription is inadmissible in any civil or criminal case. RCW 9.73.050. It is undisputed that Joseph T. recorded his conversation with Kipp without Kipp's consent. The admissibility of the recording at issue therefore turns on whether the conversation was "private" for the purposes of the privacy act.

¶17 The privacy of a conversation turns on the " 'intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case.' " *State v. Clark*, 129 Wn.2d 211, 224, 916 P.2d 384 (1996) (quoting *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992)). One factor in deciding whether a conversation was private is the subjective intentions of the parties. *State v. Townsend*, 147 Wn.2d 666, 673, 57 P.3d 255 (2002). We also consider other factors "bearing upon the reasonable expectations and intent of the participants": (1) the duration and subject matter of the conversation, (2) the location of the conversation and potential presence of third parties, and (3) the role of the nonconsenting party and his or her relationship to the consenting party. *Clark*, 129 Wn.2d at 225-26. "While each of these factors is significant in making a factual determination as to whether a conversation is private, the presence or absence of any single factor is not conclusive for the analysis." *Clark*, 129 Wn.2d at 227.

¶18 Before continuing, we address the standard of review applicable to a trial court's decision as to the admissibility of recordings under the privacy act. The oft-cited standard of review from *Clark* is "[w]hether a particular conversation is private is a question of fact, but where the facts are undisputed and reasonable minds could not differ, the issue may be determined as a matter of law." 129 Wn.2d at 225. But this is the wrong standard as to motions to suppress in criminal trials. Not only was it imported from a civil case, but it is inconsistent with Washington's Rules of Criminal Procedure and valid case law setting forth the correct standard of review for criminal motions to suppress.

¶19 *Clark* imported the above standard of review from *Kadoranian*, 119 Wn.2d at 190. *Clark*, 129 Wn.2d at 225. Kadoranian had filed a class action lawsuit alleging that the Bellingham Police Department violated the privacy act by inadvertently intercepting one of her private conversations and the similar conversations of those in a class she sought to certify. 119 Wn.2d at 181-83. The superior court granted summary judgment to the police department. 119 Wn.2d at 183.

¶20 Our Supreme Court affirmed summary judgment in part because Kadoranian's intercepted conversation was not private. 119 Wn.2d at 190-92. *In the summary judgment context*, the court held, "Whether a particular communication or conversation is 'private' and thus protected from intrusion by the privacy act is a question of fact." 119 Wn.2d at 190. The court further held that because the facts were undisputed and "reasonable minds could not differ on the subject," the issue could be determined as a matter of law. 119 Wn.2d at 190.

¶21 Viewed in light of this procedural posture, it is clear that the standard of review noted in *Kadoranian* can have no application to a criminal motion to suppress. Because *Kadoranian* came before the Supreme Court on appeal from summary judgment, the standard of review was de novo review for whether there was any genuine issue of material fact and whether Kadoranian was entitled to judgment as a matter of law. CR 56(c); *Jackowski v. Borchelt*, 174 Wn.2d 720, 729, 278 P.3d 1100 (2012). Because the facts were undisputed, there were no genuine issues of material fact and thus it was proper for the court to determine the privacy act issue de novo as a matter of law.

¶22 There is no procedure analogous to summary judgment in criminal cases. But by applying the *Kadoranian* standard to a CrR 3.6 motion to suppress, courts would resolve the issue as if it came before them on cross motions for summary judgment, as in *Kadoranian*. 119 Wn.2d at 183. Neither the Rules of Criminal Procedure nor the existing,

valid case law of this state permits this civil standard of review in criminal cases, and we would err by perpetuating such a standard.

¶23 It is well settled that we review factual findings on a motion to suppress for whether substantial evidence supports them and, if so, whether they support the trial court's conclusions of law. *State v. Fowler*, 127 Wn. App. 676, 682, 111 P.3d 1264 (2005); *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). We do not conduct the same review as the trial court—we do not substitute our own findings for those of the trial court.

¶24 This holding is consistent with our Supreme Court's prior rejection of de novo review of criminal motions to suppress in *State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). There, our Supreme Court considered and overruled a line of cases requiring reviewing courts to "undertake an independent evaluation of the evidence" when reviewing factual findings following a motion to suppress. 123 Wn.2d at 644-45. The court held that such an "anomaly in Washington law" should be discarded in favor of the rule that factual findings are reviewed for substantial evidence. 123 Wn.2d at 645-47.

¶25 Just as the "independent evaluation of the evidence" standard addressed in *Hill*, the *Kadoranian* standard as applied to criminal cases is an "anomaly in Washington law" that should be discarded. There is no principled reason to depart from *Hill* and conduct a de novo review of privacy act issues as if they were brought before us in a civil case on summary judgment. We accordingly decline to perpetuate *Clark*'s adoption of the *Kadoranian* standard in criminal cases, instead applying the well-settled standard of review for whether the trial court's findings of fact are supported by substantial evidence and whether those findings support the trial court's conclusions of law.

B. *The Trial Court's Ruling*

¶26 The trial court ruled on Kipp's motion to suppress based on the parties' moving papers, in-court argument,

and the contents of the recording. Kipp submitted a declaration in conjunction with his motion to suppress, asserting (1) Kipp feared Joseph T., (2) Kipp believed Joseph T. was armed with a knife, (3) Joseph T. secretly recorded the conversation, and (4) Kipp did not consent to being recorded. Kipp's counsel asserted in a hearing on the motion that Kipp's testimony would establish (1) the conversation took place in a kitchen in a private residence, (2) the reasons why Kipp believed that the conversation was private in that room, and (3) a third party (Joseph T.'s son) had left the room so that Kipp and Joseph T. would be alone.

¶27  Rather than take testimony, the trial court accepted the facts as put forward by Kipp's counsel. The trial court also listened to the recording of Kipp's conversation with Joseph T. In the recording, Kipp admitted the allegations, offering the excuse that he was only 19 when he molested JMC and claiming that JMC initiated the sexual contact. With regard to DGT, Kipp's only excuse was "there was a lot going on at the time." 2 Report of Proceedings (RP) at 210. Kipp acknowledged to Joseph T. that his conduct was a crime. At the end of the conversation, Kipp asked Joseph T. to meet with him in private to discuss the matter further, saying, "[W]hen we get a chance, just you and I, we will go somewhere and we'll talk, try to . . . understand everything." 2 RP at 213.

¶28  The trial court issued an oral ruling finding the conversation admissible under the privacy act.[4] The trial court first addressed the first *Clark* factor, the "nature and duration" of the conversation, finding that they split evenly.[5] The court found that the duration of the conversa-

---

[4] Under CrR 3.6(a), if the trial court determines that no evidentiary hearing is required on a motion to suppress, "the court shall enter a written order setting forth its reasons." Although the trial court failed to enter such an order, Kipp does not assign error on this basis. A party's failure to assign error or argue an issue precludes appellate consideration. RAP 10.3(g); *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003).

[5] Although "nature" was not the correct term under *Clark*, it appears that the trial court used the term to mean "subject matter." 129 Wn.2d at 225.

tion was over 10 minutes long and concluded that this weighed in Kipp's favor. But the court found that Kipp made a confession of child molestation to the victim's father, concluding that that is not the sort of subject matter that remains private, weighing against Kipp.

¶29 The trial court next addressed the location of the conversation and the potential presence of third parties. The trial court accepted Kipp's offer of proof that the conversation took place in a kitchen and that Joseph T.'s son had left the room. But the court found that because it was a common area, the potential presence of third parties was higher than it would have been in a different area of the residence.

¶30 The trial court then considered the role of the nonconsenting party and his relationship to the consenting party. The trial court found that Kipp and Joseph T. were not speaking as brothers-in-law, but "as father of a daughter and the accused molester." 1 RP at 64.

¶31 Finally, the trial court found that the analysis tipped against Kipp based on evidence of the parties' subjective intentions. The trial court found that Kipp's offer to meet with Joseph T. in private at the end of the conversation demonstrated that Kipp did not subjectively believe the conversation was private.[6]

C. *Evidentiary Hearing Not Required*

¶32 Kipp contends that because there were disputed facts as to whether the recorded conversation was private, the trial court was required to take oral testimony at an

---

[6] The dissent would replace this finding with a contrary finding apparently based on its own evaluation of the evidence. Dissent at 42-43. But our standard of review calls not for an independent evaluation of the evidence, but rather review of the trial court's findings for substantial evidence. *Hill*, 123 Wn.2d at 645-47. The question is not whether we would have made a different finding under the evidence here, but whether substantial evidence exists to support the finding that the trial court actually made. And Kipp does not challenge this finding, instead arguing only that it could have "as easily be[en] argued in favor of Mr. Kipp." Br. of Appellant at 25. Given that Kipp admits this finding is arguable, there is no basis for us to conclude that it was unsupported by substantial evidence.

evidentiary hearing on his motion to suppress. We hold that the trial court did not abuse its discretion in failing to hold an evidentiary hearing to take testimony.

¶33 CrR 3.6 governs motions to suppress evidence in criminal trials (aside from motions to suppress a defendant's statements, governed by CrR 3.5). CrR 3.6(a) provides, "The court shall determine whether an evidentiary hearing is required based upon the moving papers." The trial court has discretion whether to take oral testimony on a motion to suppress. *State v. McLaughlin*, 74 Wn.2d 301, 303, 444 P.2d 699 (1968). As noted above, a trial court abuses its discretion if its decision is manifestly unreasonable or rests on untenable grounds. *Griffin*, 173 Wn.2d at 473.

¶34 Kipp argues that the trial court was required to take testimony based on two factual disputes below: whether the conversation occurred in a private location, and whether Kipp's confession was genuine or whether Kipp falsely confessed because he feared Joseph T. But these disputes did not render the trial court's decision declining to take testimony an abuse of discretion.

¶35 As to the location of the conversation, it is undisputed that the conversation took place in a kitchen and that this kitchen was a common area. The trial court did not abuse its discretion by addressing the issue based on the undisputed facts already before it, regardless of Kipp's assertion that additional facts existed.

¶36 Kipp's argument that his confession was false is irrelevant to the issue of privacy under the privacy act. Whether or not Kipp's confession was true, the subject matter of the conversation was Kipp admitting to Joseph T. that he sexually abused Joseph T.'s daughters. Whether Kipp was being truthful when he made the confession did not alter this subject matter. The trial court accordingly did not abuse its discretion by failing to hold an evidentiary hearing to decide the veracity of Kipp's confession.

¶37 Because Kipp does not show that the trial court's failure to take oral testimony was manifestly unreasonable or based on untenable grounds, his argument that the trial court abused its discretion by failing to take testimony fails.

## D. *Findings and Conclusions Valid*

¶38 Kipp next contends that the trial court's oral findings as to the admissibility of his recorded conversation were unsupported by substantial evidence. And he argues that the trial court erroneously concluded from its findings that the conversation was not private. We disagree.

¶39 We review factual findings on a motion to suppress for whether they are supported by substantial evidence and, if so, whether they support the trial court's conclusions of law. *Fowler*, 127 Wn. App at 682; *Cole*, 122 Wn. App. at 322-23. "Substantial evidence is 'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)). We review the conclusions of law de novo. *Fowler*, 127 Wn. App. at 682.

¶40 Kipp argues that the trial court's findings of fact as to the subject matter and duration of the conversation were unsupported by substantial evidence. But it was undisputed below that the conversation was 10 minutes long and that the subject matter was Kipp apparently admitting to Joseph T. that Kipp had molested Joseph T.'s daughters.

¶41 As noted above, the fact that Kipp claimed his confession was false did not change the subject matter of the conversation—it was a confession of child molestation to the victim's father, whether it was genuine or not. That the confession may have been false goes to its evidentiary weight, not the "'intent or reasonable expectations of the participants'" as to its privacy. *Clark*, 129 Wn.2d at 224 (quoting *Kadoranian*, 119 Wn.2d at 190). Whether the confession was true or not, Kipp and Joseph T.'s reasonable expectations as to its privacy would have been the same.

The trial court's findings on this point were supported by substantial evidence.

¶42 Kipp next argues that the trial court's finding as to the potential presence of third parties was unsupported by substantial evidence. But the trial court's finding on this point was narrow—simply that the potential presence of third parties was greater in the kitchen, a common area, than it would have been in a private area of the house. Kipp does not dispute that the kitchen was a common area. The trial court's finding on this point was supported by substantial evidence.[7]

¶43 Kipp finally argues that the trial court's finding as to the relationship between the parties was unsupported by substantial evidence. He argues that the trial court erroneously focused on the nature of the conversation rather than the relationship between the parties when analyzing this factor. It was undisputed that Kipp and Joseph T. were brothers-in-law. But the undisputed evidence also shows that the men were not speaking merely as brothers-in-law but also as an aggrieved father accusing a perpetrator of molesting his children, which gave them a different relationship for purposes of that conversation than simply that of in-laws. The trial court's finding on this point was accordingly supported by substantial evidence.

¶44 All in all, the findings that Kipp challenges were supported by substantial evidence. And these findings supported the trial court's conclusion that the conversation was not private. The facts and circumstances showed that Kipp had neither the intent nor the reasonable expectation that the conversation would remain private. Kipp's argu-

---

[7] The dissent argues that the trial court should have ignored the fact that the location was a kitchen and instead focused solely on the evidence that the conversation took place in a private residence. Dissent at 40-41. But the presence of Joseph T.'s son immediately before the conversation shows that third parties had access to the kitchen. This supports the trial court's finding that there was the potential presence of third parties. We hold that the trial court based this finding on substantial evidence.

ments that the trial court erred by admitting the conversation under the privacy act fail.

## III. Testimony of Alan T.

¶45 Finally, Kipp argues that the trial court erred by excluding the testimony of Alan T. He argues that a continuance, not exclusion, was the appropriate sanction for his late disclose of Alan T. as a witness. We hold that the trial court did not err in excluding Alan T.

¶46 Under CrR 4.7(b)(1), defendants must disclose the names and addresses of intended witnesses, as well as the substance of their testimony, no later than the omnibus hearing. Sanctions for violating CrR 4.7 are within the discretion of the trial court. CrR 4.7(h)(7); *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998). But "[e]xclusion or suppression of evidence is an extraordinary remedy and should be applied narrowly." *Hutchinson*, 135 Wn.2d at 882. We review such decisions for manifest abuse of discretion. *State v. Gregory*, 158 Wn.2d 759, 822, 147 P.3d 1201 (2006).

¶47 In *Hutchinson*, our Supreme Court identified four factors a trial court should consider when deciding whether to exclude a defense witness for a discovery violation: "(1) the effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of the case; (3) the extent to which the prosecution will be surprised or prejudiced by the witness's testimony; and (4) whether the violation was willful or in bad faith." 135 Wn.2d at 883. The appropriate remedy for late disclosure is typically to continue the trial to give the other party time to interview the new witness and prepare to address his or her testimony. *Hutchinson*, 135 Wn.2d at 881.

¶48 Kipp first disclosed Alan T. as a defense witness on July 22, 2009, six days before trial. Part of the reason for Alan T.'s late disclosure was that he had been deployed with

the navy, although he had been home for two weeks before Kipp disclosed him as a witness. Kipp explained that he had not been in touch with Alan T. earlier because Alan T. "wanted time to himself" after getting home. RP (July 22, 2009) at 3.

¶49 The State argued that it would be prejudiced by Alan T.'s testimony because the substance of his testimony had not been disclosed and there was no time to find a rebuttal witness to counter Alan T.'s testimony. The trial court excluded Alan T.'s testimony. The trial court found that the lateness of the disclosures prejudiced the State, stating, "Nobody needs to be preparing for trial any more than necessary on the eve of trial." RP (Jul. 22, 2009) at 6. The court also found that the late disclosure "could have been avoided." RP (Jul. 22, 2009) at 6.

¶50 Kipp did not disclose the substance of Alan T.'s testimony until the first day of trial, July 28. Kipp asserted that Alan T. had lived with both JMC and Kipp during the alleged molestation of JMC and would testify that he had seen nothing inappropriate and that Kipp did not have a chance to be alone with JMC. Kipp also asserted that Alan T. would testify that he spent weekends in the same residence as Kipp and DGT during the period of the alleged molestation and, again, had seen nothing inappropriate. This proffered testimony was similar to that of two other witnesses, Maria T.-Kipp (Kipp's wife) and Virginia T. (Joseph T.'s mother), who testified that they lived with the parties involved and that Kipp never had the opportunity to be alone with JMC or DGT during the relevant periods.

¶51 The State argued that it would be prejudiced by Alan T.'s testimony, asserting that it had not had an opportunity to speak with its witnesses in order to attempt to counter Alan T.'s testimony. The trial court excluded Alan T.'s testimony based on the lateness of the disclosure, the duplicative nature of the testimony, and the fact that the proceedings would need to be halted for half a day or more to allow the State to speak with its witnesses. The trial

court ruled, "[Alan T.] was disclosed too late to provide an orderly trial process, and I am going to continue my ruling and disallow his testimony." 2 RP at 127.

¶52 The trial court's decision to exclude Alan T. was not an abuse of discretion under *Hutchinson*. As to the first *Hutchinson* factor, "the effectiveness of less severe sanctions," the court found that a continuance of a half day or more would be effective. But as to the second factor, "the impact of witness preclusion on the evidence at trial and the outcome of the case," the trial court found that the impact of excluding Alan T. would be low because Alan T.'s testimony duplicated that of other witnesses. As to the third *Hutchinson* factor, "the extent to which the prosecution will be surprised or prejudiced by the witness's testimony," the trial court found that the prosecution would be prejudiced by Alan T.'s testimony based on the extra time needed to interview the other witnesses so close to trial or to halt trial to prepare rebuttal testimony. And, as to the fourth *Hutchinson* factor, "whether the violation was willful or in bad faith," the trial court found that Kipp could have avoided the late disclosure of Alan T.

¶53 Under the *Hutchinson* factors, the trial court did not abuse its discretion by excluding Alan T. As Kipp points out on appeal, Alan T.'s testimony was valuable to Kipp because despite its duplicative nature, Alan T. was potentially less vulnerable to a charge of bias than Maria T.-Kipp and Virginia T. The State argued that Maria T.-Kipp was biased because she was Kipp's wife. Evidence at trial also showed that Joseph T. was involved in property disputes with both Maria T.-Kipp and Virginia T., suggesting that they might have been biased against Joseph T. Thus, in order to rebut Alan T.'s testimony, the State would not merely have been required to rebut his factual assertions but also to sort out Alan T.'s involvement in the ongoing intrafamily dispute and any bias that might have flowed from said involvement. Under these facts, the trial court did not abuse its discretion in ruling that the prejudice to the State outweighed the impact of excluding Alan T.'s testimony.

## STATEMENT OF ADDITIONAL GROUNDS

### I. Judicial Bias

¶54 In his SAG, Kipp first asserts that the trial judge was biased against him. Kipp's arguments on this point are based on matters outside the record, are insufficiently specific for us to identify the nature and occurrence of any judicial bias, and are based on trial rulings that do not demonstrate judicial bias. Kipp's claim on this point accordingly fails.

¶55 Kipp bases his argument on the following assertions: (1) the trial judge allowed the trial to continue in spite of constantly shifting witness accounts, (2) the prosecutor was conducting herself "illegally," (3) the trial judge admitted Kipp's recorded conversation with Joseph T. into evidence, (4) the trial judge did not allow Kipp's neighbor to testify in his defense, (5) the trial judge excluded Alan T.'s testimony, (6) the trial judge did not allow any character witnesses to testify on Kipp's behalf, (7) the trial judge dismissed all jurors who accepted that the State bore the burden of proof and seated a juror who believed Kipp was guilty until proved innocent, (8) the trial judge limited what Kipp could say during his testimony, (9) the trial judge did not allow Kipp's attorney to expose the false testimony of witnesses, (10) the trial judge did not correct the State when the State argued in closing that evidence was not necessary to convict Kipp, and (11) two police officers stated to Kipp that the trial judge was biased against people in the military.

¶56 "Due process, the appearance of fairness," and the Code of Judicial Conduct "require disqualification of a judge who is biased against a party or whose impartiality may be reasonably questioned." *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 841, 14 P.3d 877 (2000). But a trial court is presumed to perform its functions

without bias. *Wolfkill*, 103 Wn. App. at 841. The appearance of fairness doctrine is violated only when a reasonably prudent and disinterested observer would conclude that the parties did not obtain a fair, impartial, and neutral hearing. *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995).

¶57 Arguments (1), (4), (7), and (11) pertain to matters outside the record. This court will not review matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The appropriate vehicle for these arguments is a personal restraint petition.[8] *See McFarland*, 127 Wn.2d at 338.

¶58 Arguments (2), (8), (9), and (10) are not apparent on the record. A defendant submitting a SAG need not cite the record but must inform us of the nature and occurrence of alleged errors. RAP 10.10(c). Because these arguments are insufficiently specific for us to identify any error in the record, these arguments fail.

¶59 And arguments (3), (5), and (6) are not evidence of bias. All of them represent legal rulings that, although contrary to Kipp, would not lead a reasonable observer to believe that the trial judge was biased.

¶60 Because Kipp argues matters outside the record, argues matters without adequate specificity for us to determine their nature and occurrence, and assigns error to legal rulings that do not show bias, his argument on this point fails.

## II. Misstating Burden of Proof

¶61 Kipp also argues in his SAG that the prosecutor misstated the burden of proof at closing argument by arguing that the jury could find Kipp guilty based only on the finding that he was possibly guilty. But the record reflects that the prosecutor argued the *opposite* of what Kipp claims. During closing argument rebuttal, the pros-

[8] RAP 16.3.

ecutor argued, "Now, reasonable doubt is defined in instruction number 3. It's not a percentage, it's not any single doubt, it's *not* a mere possibility." 3 RP at 416 (emphasis added). Because it is contrary to the record, Kipp's argument on this point fails.

¶62 We affirm.

QUINN-BRINTNALL, J., concurs.

¶63 VAN DEREN, J. (dissenting) — Washington State's privacy act, chapter 9.73 RCW, "is considered one of the most restrictive in the nation." *State v. Townsend*, 147 Wn.2d 666, 672, 57 P.3d 255 (2002). Here, the trial court concluded and the majority holds that Kipp's conversation with Joseph T. was not "private" within the act's meaning. But our Supreme Court has held that the term "private" within the act means " 'belonging to one's self . . . secret . . . *intended only for the persons involved ([in] a conversation)* . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public.' " *State v. Christensen*, 153 Wn.2d 186, 192-93, 102 P.3d 789 (2004) (emphasis added) (most alterations in original) (internal quotation marks omitted) (quoting *Townsend*, 147 Wn.2d at 673).

¶64 If a conversation between two family members—after clearing the room in a private residence in order to speak alone—about an incriminating matter does not fall within the act's scope, I fail to see how our highly restrictive privacy act provides any meaningful protection to the privacy rights of Washington's citizens. Accordingly, I respectfully dissent.

I. STANDARD OF REVIEW

¶65 "Generally, the question of whether a particular communication is private is a question of fact, but may be decided as a question of law where the facts are undis-

puted." *Christensen*, 153 Wn.2d at 192. We review questions of law de novo. *State v. Jim*, 173 Wn.2d 672, 678, 273 P.3d 434 (2012).

¶66 Here, as the majority observes, the trial court accepted the facts as presented by Kipp's counsel but, nonetheless, based on those facts, concluded that the conversation was not private. Majority at 23, 27-28. In other words, the trial court found no disputed facts and decided the issue as a matter of law, which we should review de novo. The majority argues, however, that we should abandon this "oft-cited" standard of review. Majority at 23. Although the majority makes interesting observations regarding the standard's origins, I would decline to abandon it in the absence of clear direction from our Supreme Court that *Christensen* and numerous other criminal cases employed an erroneous standard of review.

¶67 Furthermore, the procedural posture of this case supports de novo review. "[W]here competing documentary evidence must be weighed and issues of credibility resolved, the substantial evidence standard is appropriate." *Dolan v. King County*, 172 Wn.2d 299, 310, 258 P.3d 20 (2011). In contrast,

> "where . . . the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo."

*Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (quoting *Smith v. Skagit County*, 75 Wn.2d 715, 718, 453 P.2d 832 (1969)); *see also Dolan*, 172 Wn.2d at 310. Here, instead of electing to conduct a full suppression hearing, which might have included conflicting live testimony and credibility determinations, the trial court accepted the facts as represented by Kipp and his counsel. In other words, the trial court made no credibility or other determinations for which its first-

hand observation of the proceedings better positioned it to make. Accordingly, the same facts that were before the trial court at the suppression hearing are before us now. Simply because the trial court chose to ignore many of those facts it purported to accept in making its findings does not mean we should now turn a blind eye to them.

¶68 Likewise, the same issue before the trial court is before us now: whether, as a matter of law, these undisputed facts indicated that the conversation was "private" within the privacy act's meaning. In the absence of disputed facts, all that remains for review is this question of law for which we are equally positioned to review as the trial court, requiring de novo review. *See Christensen*, 153 Wn.2d at 192; *State v. Byers*, 85 Wn.2d 783, 786, 539 P.2d 833 (1975) ("where the facts are undisputed, a determination of the presence or absence of probable cause to stop or arrest becomes a question of law, the judicial determination of which becomes a conclusion of law"). Accordingly, I would adhere to the *Christensen* court's standard of review and review de novo the trial court's conclusion that the conversation was not private.

II. "PRIVATE" UNDER THE PRIVACY ACT

¶69 Our courts have further held that "[a] communication is private (1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable." *Christensen*, 153 Wn.2d at 193. In evaluating whether an expectation of privacy was reasonable, we consider (1) the communication's duration and subject matter, (2) the communication's location and the presence or potential presence of third parties, and (3) the nonconsenting party's role and his relationship to the consenting party. *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 459, 139 P.3d 1078 (2006). No one factor is determinative because the privacy analysis turns on "the facts and circumstances of each case." *State v. Clark*, 129 Wn.2d 211, 224, 227, 916 P.2d 384 (1996) (quoting *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 190,

829 P.2d 1061 (1992)). In this case, I would hold that as matter of law, these factors compel a conclusion that Kipp's conversation with Joseph T. was private within the act's meaning and that the tape recording should have been suppressed.

A. Duration and Subject Matter

¶70 I agree with the trial court's conclusion that the conversation's 10-minute duration demonstrates its private nature. But I disagree with its conclusion and the majority's apparent agreement that under this factor, "a confession of child molestation to the victim's father . . . is not the sort of subject matter that remains private," thus vitiating the application of our state's privacy act. Majority at 27. Although it may be that the content of such a confession is not likely to remain private, it is certainly not reasonable to attribute intent to the perpetrator to make such a confession public or to allow it to be recorded and used against him in criminal proceedings.

¶71 Instead of focusing on the conversation's subject matter and the subjective intent of the nonconsenting party, the majority's reasoning focuses on the third factor—Kipp's role in the conversation and his relationship to Joseph T. Furthermore, to the extent that the majority's conclusion creates a per se rule that "a confession of child molestation" or any other crime is not subject to a reasonable expectation of privacy, it is erroneous.

¶72 With respect to the subject matter of communications, our Supreme Court observed that it has generally held "inconsequential, *nonincriminating*" conversations "lack[ ] the expectation of privacy necessary to trigger the privacy act." *State v. Faford,* 128 Wn.2d 476, 484-85, 910 P.2d 447 (1996) (emphasis added). For example, in *Kadoranian,* the court held that a party's recorded statement conveying "general information" that her father was not home was inconsequential, nonincriminating, not "the kind of communication that the privacy act protects." 119 Wn.2d 190-91.

Even when our Supreme Court has held that incriminating recorded conversations were not private, it observed that the recorded conversations were "routine conversations" concerning "routine illegal drug sales" and, thus, "were essentially the same conversations that the defendants might have had with a great many other strangers who approached asking for cocaine." *Clark*, 129 Wn.2d at 227-28.

¶73 Thus, it follows that a defendant's nonroutine, incriminating statements are a type of conversation that the privacy act protects. *Accord State v. Babcock*, 168 Wn. App. 598, 606, 279 P.3d 890 (2012) (defendant's conversation about hiring a hit man "covered a serious matter not normally intended to be public" and was subject to reasonable expectation of privacy). Here, Kipp incriminated himself in discussing molestation of Joseph T.'s daughters, a type of conversation certainly not involving routine subject matter or matters normally intended to be public. I would hold that the conversation's subject matter demonstrates both Kipp's subjective intent and his reasonable expectation of privacy[9] concerning the conversation that Joseph T. surreptitiously recorded.

## B. Location and Presence of Third Parties

¶74 Likewise, Kipp's subjective intent and reasonable expectation of the conversation's privacy is demonstrated by its location: a private home. Private homes are "normally

---

[9] I recognize that we normally consider the subjective intent and reasonable privacy expectations of all parties to a communication, as opposed to considering only the defendant's expectations. *See Christensen*, 153 Wn.2d at 193. But our Supreme Court has indicated that the pertinent analysis under the privacy act focuses on the intent and reasonable privacy expectations of a nonconsenting participant in the recording. *See Christensen*, 153 Wn.2d at 194 ("Furthermore, since it is Christensen's expectation of privacy with which we are concerned, . . . it cannot reasonably be said that Christensen's expectation was similarly lowered."); *Townsend*, 147 Wn.2d at 674 (analyzing only defendant's subjective intention and reasonable expectation that communications were private). Without doubt, the person who surreptitiously records a conversation does not intend for the conversation to remain private. Thus, I focus only on Kipp's subjective intent and reasonable expectations regarding privacy.

afforded maximum privacy protection." *Clark*, 129 Wn.2d at 226. Yet the trial court and the majority find dispositive the generalization that kitchens are "common area[s]" with increased potential for the presence of third parties. Majority at 27. Because this generalization resembles a per se rule contrary to the required case-by-case analysis of privacy act claims and is divorced from the specific facts of this case, I disagree. *See Faford*, 128 Wn.2d at 484 (privacy act analysis calls for case-by-case factual analysis, not per se rules).

¶75 In this case, the scant facts adduced by the trial court demonstrate Kipp's subjective intent and reasonable expectation that the conversation in the house's kitchen was private. The conversation was held in one room of a private residence. In a private residence, unlike a public meeting place such as a street or café that is potentially occupied by numerous unknown passersby, one ordinarily and reasonably expects the presence of only a limited class of other people, such as family members and guests. Here, in fact, one such family member, Joseph T.'s son, left the kitchen so that only Kipp and Joseph T. were there to converse. And there was no evidence at the suppression hearing that anyone else was in the residence who they expected to or who might intrude on or overhear their conversation. These facts demonstrate Kipp's reasonable expectation of the conversation's privacy.

C. Kipp's Role and Relationship to Joseph T.

¶76 Kipp's reasonable privacy expectations are also demonstrated by his role in the conversation and his relationship to Joseph T. In evaluating this factor, Washington courts have repeatedly held that "[t]he nonconsenting party's apparent willingness to impart the information to an unidentified stranger evidences the non-private nature of the conversation." *Clark*, 129 Wn.2d at 226-27; *see also Kadoranian*, 119 Wn.2d at 190.

¶77 But here, Joseph T. was Kipp's brother-in-law and, thus, a familiar family member, not a stranger. The trial

court and the majority reason that this relationship was irrelevant, as Joseph T. and Kipp were speaking " 'as father of a daughter and the accused molester.' " Majority at 27 (quoting 1 Report of Proceedings (RP) at 64). But the majority's focus on Kipp's role as "the accused" eviscerates the privacy act's protections for any person accused of a crime who speaks to a relative of a crime victim or any other person. Under this rationale, being suspected of or accused of a crime would always weigh against any accused person who makes an incriminating statement, yet incriminating statements are the very type of communications usually triggering the privacy act's protections. *See Faford*, 128 Wn.2d at 484-85; *Kadoranian*, 119 Wn.2d at 190-91; *Babcock*, 168 Wn. App. at 608. Moreover, such an interpretation of the privacy act encourages relatives of crime victims to surreptitiously record conversations with those they suspect of the crime, hoping to capture an incriminating statement from an unsuspecting, nonconsenting person, contrary to the act's intent.

### D. Other Factor Considered by Trial Court

¶78 The trial court also reasoned that Kipp's offer to have another private meeting with Joseph T. "tip[ped]" the analysis against Kipp because it demonstrated Kipp's subjective belief that the surreptitiously recorded conversation was not private. RP at 64. But the trial court's reasoning is flawed. To me, Kipp's comment demonstrates only that he desired a subsequent private conversation. It more clearly demonstrates Kipp's desire to continue to handle the matter privately.

¶79 I would hold that the facts before the trial court at the suppression hearing demonstrate Kipp's subjective intent and reasonable expectation of privacy sufficient to trigger the privacy act's protections. He engaged in a conversation with Joseph T., a family member, in one room of a private residence after the only known third party left the room for the purpose of leaving Kipp and Joseph T.

alone. After the other person left them alone, Joseph T. confronted Kipp with accusations of crimes against his daughters while secretly recording the conversation. Kipp then admitted to the criminal conduct while being secretly recorded and later asked for a further private meeting with Joseph T.

¶80 A clearer case for application of the privacy act can hardly be stated. Any other interpretation of these facts leaves all Washington citizens vulnerable to the surreptitious recording of incriminating and nonincriminating conversations with a familiar party in a private home, as though the act did not exist.

¶81 Because I would hold that the conversation was private, I would suppress the nonconsensual recording. Thus, I dissent from the majority's holding that this was not a private conversation protected by our privacy act and that the secret recording was admissible against Kipp at trial.

Review granted at 176 Wn.2d 1024 (2013).