FILED
COURT OF APPEALS
DIVISION II

2013 APR -9 AM 9: 02

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42422-3-II |
| Respondent, | |
| v. | |
| CHRISTIAN LEVI GAGNON, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Christian Levi Gagnon appeals his conviction of second degree rape, arguing that the trial court erred in admitting his prior conviction of unlawful imprisonment under RCW 10.58.090 and ER 404(b); that he received ineffective assistance of counsel when his attorney failed to request a limiting instruction under ER 404(b); and that cumulative error deprived him of a fair trial. We hold that admission of the prior conviction was harmless error, as our review of the record shows that the trial's outcome would not have differed without this evidence. We reject Gagnon's claims of prejudicial and cumulative error and affirm his conviction.

## FACTS

On November 28, 2010, Gagnon and several friends, including T.M., gathered at Amanda Tribble's apartment in Olympia. T.M. left Tribble's apartment at about 9:00 PM and walked downstairs to her own apartment. She put on her nightgown and got into bed.

She then heard a knock on her door. She answered it and found a "pretty drunk" and "pretty high" Gagnon outside, asking for his backpack. 1 Report of Proceedings (RP) at 9. T.M. had agreed to store his backpack in her bathroom because a can of whipped cream had exploded inside it and Tribble did not want the mess in her apartment. T.M. asked Gagnon to wait outside while she retrieved the backpack. Instead, he entered her apartment, shut and locked the door, and attempted to kiss T.M. When she resisted, Gagnon grabbed her by the throat, pushed her against the wall, and ripped off her underwear. He then vaginally raped her with his penis and anally raped her with his fingers. In the process, he bit her shoulder.

After Gagnon left, T.M. took a shower, cleaned her apartment, and threw away her nightgown and underwear. She told her therapist and some supervisors at Community Youth Services (CYS) about the assault a few days later. At their urging, she reported it to the police about a week after that. She identified Gagnon from a photo montage.

Detective Paul Evers arrested Gagnon in late January after he made conflicting statements about his whereabouts on November 28. Gagnon first said that he had not been in Olympia since November 4, and then said he was at Tribble's apartment on November 28, but left with some friends. In yet another explanation, he said he left Olympia because he had been falsely accused of T.M.'s rape and insisted he was not there on the 28th.

The State charged Gagnon with second degree rape and moved to admit evidence regarding his prior juvenile conviction for unlawful imprisonment under RCW 10.58.090 and ER 404(b). This conviction arose from Gagnon's alleged rape of his mother in August 2008. The trial court entered the following findings of fact concerning this prior offense:

> 1. On August 4, 2008, deputies of the Whatcom County Sheriff's Office contacted [R.L.], who had called 911 to report her 17-year-old son,

2

Christian Gagnon, had raped her on the evening of August 3, 2008 in her home.

2. [R.L.] reported to the deputy that at approximately 2200 hours she had been home with her son. As both were preparing for bed, [R.L.] had disrobed and made a trip to the bathroom. Gagnon's bedroom door was closed and [R.L.] had covered herself with her arms. [R.L.] reported that on leaving the bathroom she stopped at Gagnon's closed door to remind him to wake early the next morning.

3. [R.L.] reported that as she was talking to him through the closed door Gagnon opened the door and proceeded to give [R.L.] a hug. [R.L.] reported that as he tried to kiss her mouth, she attempted to push him away and commanded, "No, stop." Gagnon then forcefully threw [R.L.] onto his bed.

4. [R.L.] reported that Gagnon threw her legs up and she felt his penis penetrate her vagina. She told him to stop but was afraid of what he would do if she resisted too much. [R.L.] reported that he had done this twice before. [R.L.] reported that during the first incident Gagnon was very aggressive and forceful with her.

Clerk's Papers (CP) at 78-79. The trial court found this offense substantially similar to the current allegations:

7. The allegations in the present case are substantially similar to the factual basis relied upon in the prior Whatcom County case in that in both cases, [Gagnon] met the alleged victim in a doorway, began attempting to kiss the alleged victim and when met with resistance, forcibly vaginally penetrated the alleged victim with his penis.

CP at 79.

With regard to ER 404(b), the trial court concluded that the existence of a design to fulfill sexual compulsions evidenced by Gagnon's past acts was highly probative, that the probative value of the prior acts outweighed the risk of prejudice, and that evidence of the prior Whatcom County acts was admissible to show Gagnon's common scheme or plan to fulfill sexual compulsions. The court also concluded that Gagnon's prior act of rape was admissible under RCW 10.58.090 to show any fact in issue.

At Gagnon's trial, T.M. and Detective Evers testified to the facts set out above concerning the alleged rape on November 28, 2010, and the resulting investigation. Nina Berenfeld, the CYS counselor with whom T.M. spoke on November 30, testified that she saw bite marks on T.M.'s shoulder and a red mark on her neck. Rhonda Ayers, a CYS supervisor, testified that T.M. had bruises and marks on her shoulder and neck when they talked on December 1. Tribble testified that she saw Gagnon at T.M.'s doorstep after the gathering in Tribble's apartment and that she saw bruises on T.M.'s neck the next day. She said that when T.M. saw Gagnon a week later, she was frightened and walked away from him. When Tribble asked Gagnon about the incident, he said he could not remember and had blacked out. Tribble added that her boyfriend retrieved Gagnon's backpack from T.M.'s apartment and threw it away.

After Tribble testified, the court read this stipulation regarding Gagnon's prior offense to the jury:

> The Defendant, Christian L. Gagnon, has previously been found guilty in Whatcom County Cause Number 08-8-00421-8 of the crime of unlawful imprisonment. The factual basis for that charge was as follows: On August 4, 2008, Whatcom County Deputies contacted R.L., who reported that the defendant had raped her. The Deputy noted that R.L. was visibly upset and crying. R.L. reported that on August 3, 2008, at approximately 2200 hours, she had been at home with [Gagnon]. They had been hanging out and listening to music together. R.L. went to ready herself for bed and had completely disrobed before making one last trip to the bathroom. When R.L. left the bathroom, she stopped at [Gagnon's] door to remind him he needed to get up in the morning. [Gagnon] then opened the door and proceeded to give R.L. a hug. [Gagnon] then tried to kiss R.L., at which time she attempted to push him away and said, "no stop." [Gagnon] then forcefully threw R.L. onto his bed, threw her legs up and penetrated her vagina with his penis. R.L. reported that she told him to stop but was afraid of what he would do if she resisted too much. R.L. reported that this had happened twice in the past.

CP at 67.

The court then read the following limiting instruction to the jury:

This evidence has been admitted in this case regarding [Gagnon's] commission of a previous sex offense. [Gagnon] is not on trial for any act, conduct or offense not charged in this case. Evidence of a prior sex offense on its own is not sufficient to prove [Gagnon] guilty of the crime charged in this case. The state has the burden of proving beyond a reasonable doubt that [Gagnon] committed each of the elements of the crime charged in this case.

2 RP at 115.

Christina McVeigh, another CYS employee, testified that when she talked to Gagnon about his weekend at the end of November, he complained of being accused of something he had not done. Gagnon did not mention leaving Olympia over the weekend.

Gagnon's mother testified that her son came home to Bellingham on November 27 and was there until his arrest at the end of January. Gagnon's friend, Michael Russell, testified that he saw Gagnon in Bellingham on November 28, and he did not remember telling Detective Evers that he was mistaken about that date. Gagnon testified that he took a bus to Everett on November 26, hitchhiked to his mother's home the next day, and stayed with her until January 27. He admitted knowing T.M. but denied raping her. He testified that he did not find out about the rape rumors until he got to Bellingham.

A Greyhound bus employee found no record that Gagnon rode a Greyhound bus out of Olympia in November 2010. The State recalled Detective Evers, who testified that Tribble told him that she saw Gagnon at the door of T.M.'s apartment on November 28 and that Russell said he saw Gagnon after Christmas and not after Thanksgiving. Sandra McClanahan, the CYS mental health coordinator, testified that T.M. was traumatized on November 30 while talking about the rape and had bruises and a handprint on her neck. McClanahan also testified that she saw Gagnon in Olympia on December 1. The court then admitted the tape of a 911 call received on December 1, in which the caller identified himself as Gagnon, described his location in

Olympia, and reported the location of a runaway teen. Evers recognized Gagnon's voice. When the defense recalled Gagnon, he said it was possible he had made the call from Olympia on December 1, but he did not remember it. He added that it was also possible that he and his mother had their dates wrong.

The court's instructions to the jury included the limiting instruction it read during trial. During closing argument, defense counsel emphasized that Gagnon was not on trial for any past act. On rebuttal, the prosecuting attorney agreed and stated that the only reason the prior act was offered was to show a common scheme or plan.

The jury found Gagnon guilty as charged, and the trial court sentenced him to a standard range sentence of 100 months. Gagnon appeals.

## DISCUSSION

ADMISSIBILITY OF PRIOR CONVICTION

Gagnon argues that the trial court erred in admitting his prior conviction under RCW 10.58.090 and ER 404(b). Because our Supreme Court struck down RCW 10.58.090 as unconstitutional a few months after Gagnon's sentencing, we need only discuss the court's alternative basis for admitting the prior conviction. *See State v. Gresham*, 173 Wn.2d 405, 413, 269 P.3d 207 (2012) (RCW 10.58.090, which admitted evidence of the defendant's prior sex offenses for any purpose, violated the separation of powers doctrine).

We review a trial court's rulings under ER 404(b) for abuse of discretion. *State v. Kipp*, 171 Wn. App. 14, 20, 286 P.3d 68 (2012). A trial court abuses its discretion if it bases a ruling on untenable grounds or untenable reasons. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

6

ER 404(b) forbids a trial court to admit evidence of a person's other crimes, wrongs, or acts to prove a person's character in order to show that the person acted in conformity therewith. But ER 404(b) does not forbid "other acts" evidence admitted for other purposes, such as to show a common scheme or plan. Evidence of prior acts is admissible under this theory if (1) the State can show the prior acts by a preponderance of the evidence, (2) the evidence is admitted for the purpose of showing a common scheme or plan, (3) the evidence is relevant to prove an element of the crime charged or to disprove a defense, and (4) the evidence is more probative than prejudicial. *State v. Kennealy*, 151 Wn. App. 861, 886, 214 P.3d 200 (2009), *review denied*, 168 Wn.2d 1012 (2010). Gagnon disputes only the second element of this test.

There are two types of common plans: (1) evidence of prior acts that are part of a larger, overarching criminal plan; or (2) evidence of prior acts following a single plan to commit separate but very similar crimes. *Kipp*, 171 Wn. App. at 21. Gagnon's case involves the second type of common plan because he allegedly devised a plan and put it into action against his victims on separate but similar occasions. *Kipp*, 171 Wn. App. at 21. To introduce evidence of this second type of common scheme or plan, the prior misconduct and the charged crime must demonstrate "'such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which' the two are simply 'individual manifestations.'" *Gresham*, 173 Wn.2d at 422 (quoting *State v. Lough*, 125 Wn.2d 847, 860, 889 P.2d 487 (1995)). Although mere similarity in result is insufficient, and the offenses must be markedly and substantially similar, the common features need not show a unique method of committing the crime. *State v. DeVincentis*, 150 Wn.2d 11, 19-20, 74 P.3d 119 (2003).

The State cites the facts in *Gresham* concerning co-defendant Scherner in arguing that the facts here revealed a common scheme or plan. Scherner was charged with child molestation

7

based on his fondling of his granddaughter's genitals after he lured her to his bed while the other adults in the house were asleep. *Gresham*, 173 Wn.2d at 414-15. The court admitted testimony concerning his prior abuse of four other children. *Gresham*, 173 Wn.2d at 415-16. In each instance, Scherner took a trip with young girls and at night, while the other adults were asleep, approached the girls and fondled their genitals. *Gresham*, 173 Wn.2d at 422. Though there were some differences, they were not so great as to dissuade a reasonable mind from concluding that the acts were individual manifestations of the same plan. *Gresham*, 173 Wn.2d at 423.

This court affirmed the admission of evidence of a prior rape conviction under the common scheme or plan theory in *State v. Williams*, 156 Wn. App. 482, 491, 234 P.3d 1174, *review denied*, 170 Wn.2d 1011 (2010). When compared, the evidence of the prior and current rapes showed a common scheme involving similar victims (women of similar age, involved with drugs) and a similar method of attack (promise of drugs, attacked from behind with a forearm across the throat, strangled into unconsciousness during the rape). *Williams*, 156 Wn. App. at 491.

The evidence of common scheme or plan in this case is not nearly as strong. The trial court found sufficient commonality in these facts alone: Gagnon met the alleged victim in a doorway, began attempting to kiss the alleged victim and, when met with resistance, forcibly vaginally penetrated the alleged victim with his penis. On appeal, the State adds that in both instances, Gagnon vaginally raped the victim after "hanging out" with her and after the victim left to go to bed.

While the common factors need not be unique, substantial similarity is required, and we do not see it here. Gagnon was acquainted with one victim, who was close to him in age; the other victim was his mother. T.M. asserted that Gagnon was drunk and high when he assaulted

her; there was no such evidence in the encounter with his mother. Gagnon was home with his mother and pulled her into his bedroom and onto his bed; he entered T.M.'s apartment and pushed her against the wall. The facts that doorways, forcible kissing, and vaginal intercourse were involved do not show a common plan to rape. We agree with Gagnon that the trial court abused its discretion in admitting evidence of his prior conviction under ER 404(b).

The State asserts that any error in admitting this evidence was harmless. Under the applicable harmless error test, the question is whether within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *Gresham*, 173 Wn.2d at 433.

Gagnon presented an alibi defense. He claimed he was in Bellingham on the day of T.M.'s alleged rape and that he remained there until his January arrest. By his own subsequent testimony, however, he undermined that alibi. After the State played the 911 call, Gagnon stated he could have made it, which placed him in Olympia rather than Bellingham shortly after the rape. Several witnesses also placed him in Olympia on the day of the rape and a few days afterward. Another witness challenged his testimony that he left Olympia by bus in November. In addition to the evidence undermining Gagnon's alibi, there was evidence confirming T.M.'s testimony. Tribble testified that after Gagnon left the gathering in her apartment on the night of the rape, she saw him at T.M.'s doorstep. She added that her boyfriend later retrieved Gagnon's backpack from T.M.'s apartment and that T.M. began avoiding Gagnon. Tribble and several other witnesses testified that T.M. had bruises and marks after being raped and that she was traumatized in speaking about the incident. We see no reasonable probability that the outcome of the trial would have differed had the trial court excluded the evidence concerning Gagnon's prior bad acts.

9

INEFFECTIVE ASSISTANCE OF COUNSEL

Gagnon argues next that he received ineffective assistance of counsel when his attorney failed to request a limiting instruction under ER 404(b).

To prevail on this claim, Gagnon must show that his attorney's performance fell below an objective standard of reasonableness based on all the circumstances and that the deficient performance prejudiced the result. *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). We presume that counsel was effective and require a defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). To show prejudice, a defendant must prove that, but for the deficient performance, there is a reasonable probability that the outcome would have been different. *McFarland*, 127 Wn.2d at 335.

Where a claim of ineffective assistance is based on counsel's failure to request a particular jury instruction, the defendant must show that he was entitled to the instruction, that counsel was deficient in failing to request it, and that the failure to request the instruction caused prejudice. *State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007). He must also show that the decision not to request a limiting instruction was not tactical.

Under the law as it existed at the time of trial, no limiting instruction under ER 404(b) was necessary because evidence of the other rapes was admissible without limitation under RCW 10.58.090. *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012). The trial court did offer a limiting instruction pursuant to RCW 10.58.090 that followed the pattern instruction. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.40, at 29 (Supp. 2011). This instruction stated simply that evidence of the defendant's previous sex offense had been admitted, that this evidence did not prove the defendant's guilt of the crime

10

No. 42422-3-II

charged, and that the State still had the burden of proving each element of that crime. A subsequent instruction stating that the prior act was admissible only to show a common scheme or plan would have been confusing and somewhat contradictory. We see no basis for a claim of deficient performance under these circumstances, and Gagnon's claim of ineffective assistance of counsel fails. *See State v. Fredrick*, 45 Wn. App. 916, 923, 729 P.2d 56 (1986) (failure to show either prong of ineffective assistance of counsel ends inquiry).

CUMULATIVE ERROR

Gagnon's final argument is that cumulative error, based on his earlier arguments, entitles him to a new trial. The cumulative error doctrine applies where there have been several trial errors that do not individually require reversal but, when combined, denied the defendant a fair trial. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Having identified a single error that was harmless, we decline to grant Gagnon relief due to cumulative error.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

BJORGEN, J.

11