FILED
COURT OF APPEALS
DIVISION II

2014 MAR -4 AM 9:19

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43384-2 |
| | (Consolidated With |
| | Nos. 43517-9-II, 43569-1-II)) |
| Respondent, | |
| | UNPUBLISHED OPINION |
| v. | |
| | |
| REYCEL PEREZ-MARTINEZ, | |
| | |
| Appellant. | |

BJORGEN, J. — A jury convicted Reycel Perez-Martinez of first degree assault for shooting Eric Luna-Claro. Perez-Martinez appeals, alleging that (1) the trial court erred by denying his motion to replace his appointed counsel, (2) the prosecutor committed three different types of misconduct, and (3) insufficient evidence supports his conviction. He also raises numerous other issues in two personal restraint petitions (PRPs) consolidated with his direct appeal.

We reject Perez-Martinez's direct appeal claims. The trial court's decision to deny Perez-Martinez's motion for new counsel was not an abuse of its discretion, Perez-Martinez waived two of his prosecutorial misconduct claims and the third has no merit, and sufficient evidence supports his conviction. Because Perez-Martinez does not present his PRP claims in a

way that allows us to review them in an informed manner, we decline to reach the merits of these claims. We affirm.

## FACTS

Perez-Martinez and Luna-Claro were "best friend[s]" in Cuba before each separately immigrated to this country. II Trial (Mar. 12, 2012) at 136. After arriving in Washington, Luna-Claro worked as a maintenance worker, but he supplemented his legitimate income by selling illegal drugs, becoming a distributor for a drug cartel in 2010. After reconnecting with Luna-Claro, Perez-Martinez began asking him for assistance in obtaining work in the drug trade. Luna-Claro gave Perez-Martinez the name and information of his contact in the cartel, which led to a meeting between Perez-Martinez and members of the cartel and attempts to train Perez-Martinez as a drug courier.

A few months after Luna-Claro introduced Perez-Martinez to his cartel contact, law enforcement officials seized five kilograms of cocaine, valued at approximately $150,000, that the cartel had sent to Luna-Claro. Unfortunately for Luna-Claro, the cartel considered him liable for payment on the shipment regardless whether he received it. Luna-Claro managed to pay some $30,000, but he could not pay the balance of the debt.

Not long after Luna-Claro's difficulties with the cartel began, Perez-Martinez showed up at his door with an associate.[1] At trial, Luna-Claro and Perez-Martinez presented starkly different accounts of what transpired after Perez-Martinez entered Luna-Claro's house.

---

[1] Perez-Martinez testified at trial that he did not know the man's surname and knew him only as "Arnaldo" despite travelling from Las Vegas to Vancouver with him. IV Trial (Mar. 14, 2012) at 534-36.

2

According to Luna-Claro, he, Perez-Martinez, and Perez-Martinez's associate went into his garage, where they began "talking about business, about drugs." II Trial (Mar. 12, 2012) at 144-45. Luna-Claro sat down in a chair, and Perez-Martinez, unexpectedly and without provocation, pulled out a pistol and shot him in the abdomen from a distance of four or five feet. While Luna-Claro lay on the ground, Perez-Martinez walked up to him and pulled the trigger to shoot him again, but the gun did not fire. Perez-Martinez then kicked Luna-Claro several times, turning to leave when Luna-Claro's wife came to the garage to investigate the shot and yelled for him to get out. At trial, Luna-Claro opined that the cartel had sent his best friend to kill him because of his unpaid debt.

According to Perez-Martinez, he arrived at Luna-Claro's house to confront him about a storage locker Luna-Claro had opened in his name, ostensibly so that Perez-Martinez would have a local bill to establish residency in Washington. Perez-Martinez was upset about the locker because he believed Luna-Claro was using it for his drug trade. After Perez-Martinez entered Luna-Claro's house with his unknown associate, they all went to the garage where they discussed the dispute. Luna-Claro became angry at Perez-Martinez, swore at him, and then pulled a gun from his waistband "very slow[ly]." IV Trial (Mar. 14, 2012) at 553-54. Perez-Martinez lunged at Luna-Claro, and the two struggled for the gun, which discharged during the struggle. Perez-Martinez, who testified he was "in fear for [his] life," later explained that nerve damage in his hand might have caused him to fire the gun without knowing that he had pulled the trigger. IV Trial (Mar. 14, 2012) at 555-56. After the shot, Luna-Claro asked Perez-Martinez to take the gun and flee because the sound might draw a police response. Perez-Martinez complied and later disposed of the gun off a local freeway.

3

The State charged Perez-Martinez with first degree attempted murder and first degree assault, seeking enhanced penalties for each charge due to his use of a firearm.

Before trial, Perez-Martinez moved for new appointed counsel. When asked why he wanted new counsel, Perez-Martinez stated that his attorney was "not doing a good job for" him, that his attorney worked for the prosecution, and that his attorney said that he had killed Luna-Claro. I Motions (Dec. 12, 2011) at 5-7. The trial court explained to Perez-Martinez that his attorney did not work for the prosecution and that, since the State had not charged him with murder, he must have misheard or misunderstood what his attorney had said. The court denied the motion for new counsel.

When the court again considered the issue several months later, Perez-Martinez stated that he wanted new counsel because his attorney had found no other witnesses to help defend him and his attorney had misled him into believing the State would present some kind of plea deal. He then stated that he simply did not trust his attorney. The trial court noted that, given the facts the State had alleged, it seemed unlikely that Perez-Martinez's attorney could find other witnesses, because he could not give the attorney the information necessary to find Arnaldo. Concerning the plea deal, the State informed the court that it had offered a plea, but that Perez-Martinez had rejected it. Perez-Martinez then again refused the offer in open court. Finally, the court attempted to allow Perez-Martinez to speak in private with his attorney about the offer, but Perez-Martinez refused, saying he would not speak with counsel. Again, the court declined to appoint Perez-Martinez new counsel.

No. 43384-2-II
(Cons. w/ Nos. 43517-9-II, 43569-1-II)

At trial, the State presented Luna-Claro and witnesses whose testimony corroborated his account. Police officers testified that their repeated searches of Luna-Claro's house disclosed no evidence that he possessed a gun. Officers also testified that searches of the garage disclosed one spent and one live round. One officer testified that this evidence was consistent with Luna-Claro's story that Perez-Martinez attempted to shoot him twice, but that only one bullet fired. Another officer testified that, based on the lack of gunshot residue on Luna-Claro's clothes, he was not shot at close range, as in a struggle for control of a gun, but from a distance, as Luna-Claro testified. Luna-Claro's neighbors testified that Perez-Martinez approached the house and left in different directions, suggesting a plan to avoid identification and capture.

Perez-Martinez testified in his own defense. Given Perez-Martinez's testimony about his fear for his life, the trial court determined it would instruct the jury on self-defense over the State's objections.

During closing arguments, the State argued that the evidence indicated that Perez-Martinez had fabricated his self-defense story. It also challenged whether Perez-Martinez had acted in self-defense, even if the jury accepted his version of events, claiming that Perez-Martinez had stated that he accidentally shot Luna-Claro instead of shooting him in self-defense.[2] Finally, the State told the jury that Luna-Claro had been "open" with them and had

_____

[2] The prosecutor's argument stated in part:
    You're going to get a self-defense instruction the Court told you in your jury instructions. The interesting thing about that is he's never claimed that it was self-defense. He said that what happened on that day was not that he--that the gun was ever pointed at him, but that he lunged for the gun once he slowly saw it coming out in the middle of an argument. He was never faced with imminent danger. He was arguing with his friend, which he himself said is something you can do.

5

"told the truth" based on his admission of his criminal activities and the corroborating physical evidence. V Jury Trial & Sentencing Hearing (Mar. 15, 2012) at 689, 693.

The jury found Perez-Martinez not guilty of attempted murder, but convicted him of first degree assault with a firearm enhancement. Perez-Martinez timely appeals.

Perez-Martinez also pursued collateral post-conviction relief. He filed two separate motions in the trial court asking for, among other things, a vacation of his conviction, arrest of the judgment against him, a writ of habeas corpus, and a new trial. The superior court transferred these motions to us for consideration as a timely PRP under CrR 7.8(c)(2). This court's commissioner consolidated Perez-Martinez's PRPs, Nos. 43517-9-II and 43569-1-II, with his direct appeal.

ANALYSIS

I. DENIAL OF THE MOTION FOR NEW COUNSEL

Perez-Martinez first argues that the trial court erred by denying his motion for new counsel. He maintains that the trial court failed to give proper consideration to his claims of an irreconcilable conflict with his attorney and denied his motion on improper grounds. Under governing standards, the trial court properly denied the motion.

Criminal defendants have a constitutional right to counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The right to counsel secures the defendant a fair trial by ensuring a

---

He's not claiming self-defense. He's claiming it was an accident. He's claiming it was an accident because his hand has lost feeling.

V Jury Trial & Sentencing Hearing (Mar. 15, 2012) at 651-52. Perez-Martinez does not cite to it, but the State repeated the argument that he was claiming an accident as opposed to self-defense a few minutes later.

6

functioning adversarial process, rather than a meaningful attorney-client relationship. *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). Therefore,

> [t]o justify the appointment of new counsel, a defendant "must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant."

*State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004) (quoting *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997)). We review a trial court's denial of a motion for the appointment of new counsel for an abuse of discretion. *Varga*, 151 Wn.2d at 200.

Perez-Martinez claims that he had an irreconcilable conflict with his attorney, requiring new counsel. To determine whether this conflict entitled Perez-Martinez to new counsel, we examine three factors: the extent of the conflict, the adequacy of the trial court's inquiry into the conflict, and the timeliness of the motion to substitute counsel. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 724, 16 P.3d 1 (2001) (citing *United States v. Moore*, 159 F.3d 1154, 1158-61 (9th Cir. 1998)).

A.     The Extent and Causes of the Conflict

We first consider "the extent and nature of the breakdown in the relationship and its effect on the representation." *State v. Schaller*, 143 Wn. App. 258, 270, 177 P.3d 1139 (2007). With regard to the first part of this inquiry, we look at how difficult the defendant's relationship with his or her attorney had become and the causes of the conflict. *Stenson*, 142 Wn.2d at 724-31. New appointed counsel may be justified if the attorney-client relationship is marked by such things as "'quarrels, bad language, threats, and counter threats'" because these suggest the attorney cannot diligently represent his or her client's interests. *Stenson*, 142 Wn.2d at 724

7

(quoting *United States v. Williams*, 594 F.3d 1258, 1260 (9th Cir. 1979)). However, the origin of the difficult relationship matters just as much as the conflict itself; a defendant must show the breakdown exists because of "'identifiable objective misconduct by the attorney.'" *Stenson*, 142 Wn.2d at 725 (quoting *Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994)). A defendant's "loss of confidence or trust" in his or her counsel does not suffice to require the appointment of new counsel. *Varga*, 151 Wn.2d at 200. With regard to the second part of the inquiry into the first *Stenson* factor, unless the defendant shows that the breakdown of the attorney-client relationship resulted in "the complete denial of counsel," he or she must show prejudice to demonstrate that the trial court erred in denying a motion for new counsel. *Stenson*, 142 Wn.2d at 722.

The nature and extent of the claimed conflict does not rise to the level justifying the appointment of new counsel. First, Perez-Martinez's relationship with his attorney was never marked by the type of outright quarrels, threats of violence, or threats to render deficient performance that indicate an attorney cannot represent the client in a diligent manner. *See Stenson*, 142 Wn.2d at 724-25. Perez-Martinez's mistaken beliefs that his counsel worked for the prosecutor and that his counsel had stated that he had killed Luna-Claro do not show misconduct by his attorney. Perez-Martinez's other grievances with his attorney are the types of loss of confidence or trust that do not justify the appointment of new counsel under the case law above. While Perez-Martinez's refusal to speak with his counsel in some instances does create concern about a breakdown in the adversarial process, "[i]t is well settled that a defendant is not entitled to demand a reassignment of counsel on the basis of a breakdown in communications where he simply refuses to cooperate with his attorneys." *Schaller*, 143 Wn. App. at 271.

8

Second, the effect of any conflict on the representation Perez-Martinez received does not justify new counsel. To determine if an irreconcilable conflict resulted in the complete denial of counsel, we scrutinize the record and consider evaluations of the attorney's performance by the trial court and defendant. *Stenson*, 142 Wn.2d at 728-30. The record contains no evidence that Perez-Martinez received "anything approaching inadequate representation" or that his "right to effective assistance of counsel was jeopardized by his continued representation" by his attorney. *Schaller*, 143 Wn. App. at 270. Reflecting this, the trial court noted that Perez-Martinez's attorney had done "a very good job at [Perez-Martinez's] defense." IV Trial (Mar. 14, 2012) at 545. Perez-Martinez himself echoed this assessment, stating, "I've seen really during this trial [that his attorney] has done a good job"; indeed, Perez-Martinez apologized to his attorney for the allegations he made in requesting new counsel after agreeing that his attorney had represented him well. IV Trial (Mar. 14, 2012) at 545. Because he fails to show that his difficulties with his attorney affected his representation at trial, Perez-Martinez must show prejudice to prevail on this factor, and he does not even make an argument in this regard.

The first *Stenson* factor therefore weighs in favor of affirming the trial court's denial of Perez-Martinez's motion. Perez-Martinez fails to show a conflict arising from grounds we accept as bases for appointing new counsel and the representation he received rebuts any concerns that the adversarial process guaranteed by the Sixth Amendment's right to counsel broke down.

B.     The Trial Court's Inquiry

We next look to the adequacy of the trial court's inquiries about the conflict. Perez-Martinez claims that the trial court erred under this prong by failing to question him "'privately

9

and in depth.'" Br. of Appellant at 15 (quoting *United States v. Nguyen*, 262 F.3d 998, 1004 (9th Cir. 2001). In support, Perez-Martinez cites several Ninth Circuit cases that hold that the trial court must indeed privately question a defendant and ask "'specific and targeted questions'" to determine whether new counsel is warranted. Br. of Appellant at 15 ((quoting *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777-78 (9th Cir. 2001)).

While decisions from the federal circuit courts can provide persuasive authority concerning federal questions, they "are not binding upon the Washington Supreme Court or this court." *Feis v. King County Sheriff's Dep't*, 165 Wn. App. 525, 547, 267 P.3d 1022 (2011). We are instead bound by decisions from the Washington Supreme Court and the United States Supreme Court interpreting the federal constitution. Perez-Martinez cites no United States Supreme Court opinion requiring that the trial court inquire privately about a defendant's conflict with his or her attorney. Opinions of our state Supreme Court hold that the trial court makes an adequate inquiry into "the merits of [the defendant's] complaint" by affording the defendant "the opportunity to explain the reason[s] for [his or her] dissatisfaction with counsel" and questioning counsel about the "merits of [the] complaint." *Varga*, 151 Wn.2d at 200-01 (affirming the denial of a motion for new counsel where the trial court inquired about the conflict in the presence of the defendant and his attorney); *Stenson*, 142 Wn.2d at 726-30 (same). Here, the trial court offered Perez-Martinez two separate opportunities to explain why he wanted new counsel, and engaged in lengthy discussions about the merits of his requests. The trial court also explored the issue with his counsel during those same two hearings. The trial court conducted an adequate inquiry.

10

C.      Timeliness

Finally, we examine the timeliness of the motion for substituting counsel. Perez-Martinez makes two arguments on this point. First, he alleges that he made a timely motion that the trial court rejected over impermissible concerns about its trial schedule. He cites *Nyugen*, which held that even a motion for substituting counsel made the day of trial was timely where denied for impermissible reasons. 262 F.3d at 1003. However, the trial court's consideration of the delay involved with the appointment of new counsel did not revolve around a desire to keep to its own trial schedule. Instead, its consideration of the delay focused on its attempt to honor all of Perez-Martinez's Sixth Amendment rights, including his right to a speedy trial.

Second, Perez-Martinez argues the trial court made inconsistent rulings because, after denying his motion for new counsel, it allowed his attorney a continuance to prepare. Again, while the federal cases Perez-Martinez cites provide persuasive authority, we are bound by our Supreme Court's decisions. Our Supreme Court has held that the delay resulting from the substitution of counsel can weigh against the defendant in consideration of the third *Stenson* factor. 142 Wn.2d at 732. Here, the trial court noted that the time necessary to allow a new attorney to familiarize himself or herself with the case would have been extensive and reached long past any continuance it would grant his current attorney. This delay shows Perez-Martinez's motion to be untimely under the third *Stenson* factor. 142 Wn.2d at 732.

We hold that the trial court properly exercised its discretion in denying Perez-Martinez's motion for the substitution of new counsel. Each of the factors we use to review the trial court's

11

decision indicates the trial court properly denied the motion. We cannot say that the trial court made a decision that "no reasonable person would take" or one based on "'untenable grounds'" or "'untenable reasons.'" *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

## II. PROSECUTORIAL MISCONDUCT

Perez-Martinez next alleges that the prosecutor committed three different types of misconduct. First, he claims that the prosecutor's closing arguments misstated the law and burden of proof regarding self-defense. Second, Perez-Martinez contends that the prosecutor's closing argument impermissibly vouched for Luna-Claro's credibility. Finally, Perez-Martinez maintains that the prosecutor violated her duty to prevent the admission of false testimony and her duty to correct any false testimony in the record. We hold that Perez-Martinez waived his first two claims and failed to make the necessary showings on his third.

Because prosecutors "represent[] the people" as "quasi-judicial officers" they owe a "duty to subdue their courtroom zeal for the sake of fairness to a criminal defendant." *State v. Fisher*, 165 Wn.2d 727, 746, 202 P.3d 937 (2009). A defendant claiming that a prosecutor has violated this duty bears the burden of showing that "the prosecuting attorney's conduct was both improper and prejudicial." *Fisher*, 165 Wn.2d at 747. Demonstrating prejudice requires the defendant to show that the improper conduct had a "substantial likelihood of affecting the jury's verdict." *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). When, as here, the defendant fails to object at trial to the challenged conduct, he or she waives the misconduct claim unless the argument was "flagrant and ill[-]intentioned" such that "'no curative instruction would have obviated any prejudicial effect on the jury.'" *Emery*, 174 Wn.2d at 760-61 (quoting

12

*State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In evaluating possible waiver

under this standard, we focus our analysis on the trial court's ability to remedy the impropriety,

rather than whether it was flagrant and ill-intentioned. *Emery*, 174 Wn.2d at 762.

A.      Closing Argument on Self-Defense

Perez-Martinez alleges two types of misconduct in the prosecutor's closing argument

about his self-defense claim. First, Perez-Martinez argues that the prosecutor impermissibly

shifted the burden of proving self-defense to him by stating that he never testified that Luna-

Claro pointed the gun at him, meaning that he never faced imminent danger. Second, Perez-

Martinez claims that the prosecutor's closing argument incorrectly stated that a self-defense

claim was mutually exclusive with a defense of accident, "eas[ing] the State's burden" of

disproving self-defense. Br. of Appellant at 22. To support this argument he cites the

prosecutor's statement that "[h]e's not claiming self-defense. He's claiming it was an accident.

He's claiming it was an accident because his hand has lost feeling." V Jury Trial & Sentencing

Hearing (Mar. 15, 2012) at 651-52. We find no impropriety in the first of these arguments and,

although we find the second argument improper, we affirm Perez-Martinez's conviction as he

waived his claim of error by failing to object.

1. Impropriety

We begin with the threshold question of whether the prosecutor made improper

comments. For this inquiry, we examine the remarks in "the context of the prosecutor's entire

argument, the issues in the case, the evidence discussed in the argument, and the jury

instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

Perez-Martinez first alleges that the prosecutor shifted the burden of proof to him by arguing that "there was no evidence of self-defense." Br. of Appellant at 20. He analogizes his case to *State v. McCreven* and contends that our opinion there makes this argument improper. *See* 170 Wn. App. 444, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015, 297 P.3d 708 (2013). In *McCreven*, the prosecutor argued that the defendants had to prove self-defense by a preponderance of the evidence before the State had any duty to disprove self-defense beyond a reasonable doubt. 170 Wn. App. at 468-71. *McCreven*, however, offers no support to Perez-Martinez. The prosecutor here did not suggest that Perez-Martinez had a duty to prove self-defense or that the State did not bear the burden of disproving self-defense beyond a reasonable doubt until he did so. Instead, the prosecutor attacked the fit of the evidence in the record with Perez-Martinez's theory of self-defense in order to shoulder the State's burden of disproving self-defense beyond a reasonable doubt. A prosecutor may permissibly argue that the evidence does not support the defense's theory of events. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994); *State v. Graham*, 59 Wn. App. 418, 429, 798 P.2d 314 (1990); *State v. Contreras*, 57 Wn. App. 471, 476, 788 P.2d 1114 (1990). There was no impropriety with this argument.

Perez-Martinez also alleges that the prosecutor improperly told the jury to disregard his claims of self-defense when she told them "[h]e's not claiming self-defense. He's claiming it was an accident." V Jury Trial & Sentencing Hearing (Mar. 15, 2012) at 651-52. At trial, Perez-Martinez claimed that the shooting of Luna-Claro, though an accident, resulted from his use of force to defend himself from Luna-Claro. Under facts like these, self-defense is not mutually exclusive with accident. *State v. Callahan*, 87 Wn. App. 925, 930-33, 943 P.2d 676 (1997). While the prosecutor certainly could argue that the facts did not fit with a claim of self-defense,

14

she did more than that here. Even in the context of an argument concerned with disproving self-defense beyond a reasonable doubt, at best the prosecutor's argument misstated the law of self-defense and, at worst, invited the jury to disregard the trial court's instructions on self-defense. Viewed either way, the argument was improper. *State v. Asaeli*, 150 Wn. App. 543, 594-96, 208 P.3d 1136 (2009) (a prosecutor makes an improper argument by misstating the law of self-defense in a way suggesting that defendant cannot avail himself or herself of the defense because of the misstatement); *State v. Cardus*, 86 Hawaii 426, 433, 439, 949 P.2d 1047 (Haw. Ct. App. 1997) (prosecutor makes improper argument by "urg[ing] the jury to, in effect, ignore the jury instructions").

2. Waiver

We next turn to whether Perez-Martinez is entitled to relief for the prosecutor's improper argument about accident and self-defense. As noted, Perez-Martinez failed to object at trial. To obtain relief he must show both a substantial likelihood that the argument affected the jury's verdict and that the argument was flagrant and ill-intentioned such that the court could not have addressed the argument's impropriety with a curative instruction. *Emery*, 174 Wn.2d at 762. Because a curative instruction would have eliminated any prejudicial effect created by the improper argument, we hold Perez-Martinez waived his claim of error.

Perez-Martinez argues that he did not waive his claim because the prosecutor's argument was flagrant and ill-intentioned because it disregarded the trial court's decision that Perez-Martinez had introduced sufficient evidence to require a self-defense instruction. Perez-Martinez contends that the argument "presented the jury with a distorted view of its function" that a curative instruction would not have rectified. Br. of Appellant at 23. The Supreme Court has,

15

however, several times in recent years rejected arguments similar to the one Perez-Martinez makes and held that, even where a prosecutor's argument undermines the State's burden of proof, the trial court may cure the impropriety with an instruction that educates the jury on its role and the State's burden of proof. *Emery*, 174 Wn.2d at 764; *State v. Warren*, 165 Wn.2d 17, 26-28, 195 P.3d 940 (2008). We have held that a curative instruction can eliminate any prejudicial effect arising from a prosecutor's misstatement of the law of self-defense. *Asaeli*, 150 Wn. App. at 595-96. Had Perez-Martinez objected, the trial court could have explained to the jury that it needed to both consider Perez-Martinez's self-defense theory despite the prosecutor's statements and hold the State to its burden of disproving self-defense beyond a reasonable doubt. *See Emery*, 174 Wn.2d at 764. We presume that jurors follow these instructions. *State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990).

Perez-Martinez also argues that, because the improper argument concerned the "heart of the defense case," no curative instruction could have obviated the prejudicial effects of the argument, citing *State v. Powell*, 62 Wn. App. 914, 919, 816 P.2d 86 (1991). Br. of Appellant at 23. In *Powell*, the prosecutor argued that a failure to convict would send a message inviting the sexual abuse of children, an argument feeding on the jury's desire to protect children and its revulsion at child-molestation. 62 Wn. App. at 918 & n.4. The *Powell* court found this flagrant and ill-intentioned and determined that the argument denied Powell a fair trial because, in the context of the argument, a curative instruction could not have eliminated the prejudice it caused. 62 Wn. App. at 918-19. We may readily distinguish the argument made in *Powell* from the one made in Perez-Martinez's case: the prosecutor's argument here concerned how the jury should

evaluate the evidence, not an appeal to its passions or prejudices. The prosecutor's argument was simply not the type that a curative instruction cannot rectify.

B.    <u>Vouching</u>

Perez-Martinez also contends that the prosecutor impermissibly vouched for Luna-Claro during closing argument by personally attesting to his credibility and referencing matters outside the record. We hold that the prosecutor improperly vouched for Luna-Claro, but that Perez-Martinez waived any claim of error.

1. Impropriety

A prosecutor acts improperly if he or she vouches for the credibility of a witness by stating a personal belief in the veracity of a witness or referencing matters outside the record to bolster the witness's credibility. *State v. Ish*, 170 Wn.2d 189, 196, 206, 208, 241 P.3d 389 (2010) (Chambers, J. lead opinion) (Sanders, J. concurring and dissenting). Vouching improperly puts the prestige of the prosecutor's office behind the witness's testimony and violates a prosecutor's "special obligation to avoid 'improper suggestions, insinuations, and especially assertions of personal knowledge.'" *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935)).

Perez-Martinez alleges the first type of vouching occurred here when the prosecutor informed the jury that Luna-Claro had been open and honest with them. We give prosecutors "wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury." *Stenson*, 132 Wn.2d at 727. However, the prosecutor may not implicitly or explicitly express a personal belief about the veracity of a witness. *State v.*

17

*Reed*, 102 Wn.2d 140, 143-48, 684 P.2d 699 (1984). The prosecutor's statements that Luna-Claro had been honest with the jury was an implicit expression of the prosecutor's personal belief in Luna-Claro's credibility and therefore improper. *See Reed*, 102 Wn.2d at 145-46.

Perez-Martinez also argues that the second type of vouching occurred because the prosecutor's closing argument "[wa]s riddled with prejudicial statements of 'fact' that are not in evidence." Appellant's Statement of Additional Grounds (SAG) at 18. Perez-Martinez fails to identify a single one of these multiple references to matters outside the record. While we do not require a defendant to cite to the record for arguments made in a statement of additional grounds made under RAP 10.10, we do require that the arguments be sufficiently "specific for us to identify any error in the record." *State v. Kipp*, 171 Wn. App. 14, 35, 286 P.3d 68 (2012), *rev'd by State v. Kipp*, No. 88083-2, ___ P.3d ___, 2014 WL 465635 (Wash. Feb. 6, 2014); RAP 10.10(c). Perez-Martinez's argument provides no basis to even begin looking for any alleged instances of the second type of vouching, and we decline to address the merits of this argument.

2. Waiver

Again, Perez-Martinez did not object at trial to the vouching he now objects to. Had Perez-Martinez objected, the trial court could have informed the jury that it alone could measure the credibility of witnesses. The trial court also could have explained that the prosecutor's statements about Luna-Claro's credibility were arguments that it could not consider as evidence. We presume that jurors follow these instructions and have no reason to disregard that presumption here. *Swan*, 114 Wn.2d at 661-62. Because the court could have addressed the argument's impropriety with a curative instruction, Perez-Martinez's failure to object waives this claim of error. *Emery*, 174 Wn.2d at 762.

18

C.    Countenancing False Testimony

Perez-Martinez next alleges that the prosecutor committed misconduct by using testimony known to be false in order to convict him. Perez-Martinez points to what he claims are several inconsistencies between Luna-Claro's statements to the police and his testimony at trial and argues that the prosecutor's failure to ask Luna-Claro about the inconsistencies constituted misconduct.

The due process clause of the Fourteenth Amendment to the United States Constitution imposes on prosecutors a duty not to introduce perjured testimony or use evidence known to be false to convict a defendant. *State v. Finnegan*, 6 Wn. App. 612, 616, 495 P.2d 674 (1972) (citing *Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103, 2 L. Ed. 2d 9 (1957)). This duty requires the prosecutor to correct state witnesses who testify falsely. *Finnegan*, 6 Wn. App. at 616 (citing *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)). To succeed on his claim that the prosecutor used false evidence to convict him, Perez-Martinez must show that "(1) the testimony [or evidence] was actually false, (2) the prosecutor knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). We must deny Perez-Martinez relief based on this claim, because he fails to make the necessary showing for the first two of these elements.

First, Perez-Martinez offers no evidence to demonstrate the falsity of Luna-Claro's testimony at trial other than his own version of events, which contradicts Luna-Claro's. However, "[i]ndisputable falsehood is not established by a simple swearing contest." *Rosencrantz v. Lafler*, 568 F.3d 577, 585-86 (6th Cir. 2009). Where the jury hears from

19

witnesses and determines to credit one, but not the other, we may not overturn that determination. *See Rosencrantz*, 568 F.3d at 586 (6th Cir. 2009) (quoting *United States v. Bortnovsky*, 879 F.2d 30, 33 (2d Cir. 1989)). The jury heard from Luna-Claro and from Perez-Martinez, and it accepted Luna-Claro's version of events. We must defer to this determination. *See, e.g., State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Second, even if we were to assume that Luna-Claro testified falsely, Perez-Martinez offers no evidence that suggests the prosecutor knew or should have known that the testimony was false. The evidence recovered at the scene corroborated Luna-Claro's account and the prosecutor would have had no reason to doubt his version of events.

### III. SUFFICIENCY OF THE EVIDENCE

Perez-Martinez next asserts that the State did not present sufficient evidence to disprove his claim of self-defense beyond a reasonable doubt. We disagree.

The Fourteenth Amendment's due process clause requires that the State prove every element of an offense beyond a reasonable doubt. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). We review challenges to the sufficiency of the State's evidence by examining "'whether, after viewing the evidence most favorable to the State, any rational trier of fact could have found the essential elements of [the crime] beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1980)), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). A defendant challenging the sufficiency of the evidence used to convict him or her must "admit[] the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence." *State v. Caton*, 174 Wn.2d 239,

20

241, 273 P.3d 980 (2012) (per curium). As noted above, we defer to the trier of fact's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of the evidence. *Camarillo*, 115 Wn.2d at 71.

Perez-Martinez's challenge to the sufficiency of the evidence underlying the first degree assault conviction asks us to reweigh the evidence against him. Specifically, he asks us to determine that he did not bring a gun to Luna-Claro's house and that Luna-Claro was not credible. Our constitutionally mandated respect for the jury as a finder of fact prevents us from doing what Perez-Martinez asks. *See Green*, 94 Wn.2d at 221. Luna-Claro's testimony, which Perez-Martinez must accept as true for purposes of his sufficiency challenge, shows that Perez-Martinez shot Luna-Claro while Luna-Claro sat in a chair posing no threat to him. This evidence, in and of itself, not only satisfied the State's burden of proof for first degree assault, but also satisfied the State's burden of proving Perez-Martinez did not act in self-defense. *See State v. Flett*, 98 Wn. App. 799, 805, 992 P.2d 1028 (2000) (witness testimony that they did not threaten their attacker sufficient for a first degree assault conviction when defendant suggested that he shot at them in self-defense). Significantly, the State's other witnesses testified that physical evidence found at the scene corroborated Luna-Claro's account. Sufficient evidence supports Perez-Martinez's conviction.

## IV. PEREZ-MARTINEZ'S PRP CLAIMS

Finally, Perez-Martinez raises numerous issues in his two consolidated PRPs. These include violations of the disclosure duties found in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); various species of ineffective assistance of counsel claims; a violation of his right to confront witnesses against him; claims of instructional error; claims that

21

he did not receive proper interpretation; claims of errors in denying his motions to suppress; violations of his fair trial rights; claims of evidentiary errors; and claims of due process violations due to insufficient evidence sustaining his conviction. Motion to Merge Counts and Vacate Conviction and Relief of Confinement, No. 11-1-01115-1 (Wash. Super. Ct. May 21, 2012); Affidavit in Support for Relief from Confinement, Vacate Conviction for Order, No. 11-1-01115-1 (Wash. Super. Ct. May 21, 2012); Affidavit in Support of Judgment of Arrest, No. 11-1-01115-1 (Wash. Super. Ct. May 22, 2012); Petition for Writ of Habeas Corpus, No. 11-1-0115-1 (Wash. Super. Ct. May 22, 2012); Affidavit in Support for New Trial, No. 11-1-0115-1 (Wash. Super. Ct. May 21, 2012).

Perez-Martinez presents his claims in a manner leaving us unable to review them. While we may show some solicitousness to pro se litigants filing PRPs, we do require, at a minimum, that they provide the "facts [or] evidence" necessary to decide the issues they raise so that we "make an informed review." *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). Failure to do so requires us to decline to reach the merits of their claims. *Cook*, 114 Wn.2d at 814. While Perez-Martinez offers numerous affidavits in support of his various claims, these affidavits offer only "[b]ald assertions and conclusory allegations." *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Perez-Martinez does not identify a single point in his trial where an alleged error occurred, and he provides no evidence that would allow us to determine that the effect of any alleged error was prejudicial. Under *Cook* and *Rice*, we decline to reach the merits of his claims.

CONCLUSION

We rule against Perez-Martinez's direct appeal claims and affirm his conviction.

Because Perez-Martinez fails to make his PRP claims in a manner that we can review, we cannot

reach their merits.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, A.C.J.

MAXA, J.